UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:    GLORIA GORDON-BROWN    :    Chapter 13
:
Debtor(s)    :    Bky. No. 05-31268ELF
:

## ORDER

AND NOW, for the reasons set forth in the accompanying Memorandum, it is hereby

ORDERED that:

1. The Debtor's Objection to the Proof of Claim of Deutsche Bank National Trust Co., as custodian or trustee, f/k/a Bankers Trust Co. Of CA., N.A., c/o Chase Manhattan is granted in part and denied in part.

2. The itemized claim for mortgage arrears filed as part of the proof of claim is reduced by the amounts listed below:

   A. $290.91 based on a refund received the Sheriff's Office;

   B. $96.75 fee for "property inspections;

   C. $550.00 in prepetition attorney's fees.

3. Claim No. 6 is allowed a secured claim for prepetition mortgage arrears in the amount of $6,154.49.

Date: 4/18/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

ZUNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:        **GLORIA GORDON-BROWN**        :        Chapter 13
:
**Debtor(s)**        :        Bky. No. 05-31268ELF
:

# MEMORANDUM OPINION

BY:  ERIC L. FRANK,  U.S. BANKRUPTCY JUDGE

## I. INTRODUCTION

Debtor Gloria Gordon-Brown ("the Debtor") has filed an objection to the amended proof of claim filed by Chase Manhattan ("Chase").  Chase filed the claim as a secured claim in its capacity as servicer of the mortgage on the Debtor's residential real estate held by Deutsche Bank National Trust Co., as custodian or trustee, f/k/a Bankers Trust Co. Of CA., N.A. ("Deutsche"). In the objection, the Debtor challenged certain legal expenses which are set forth in the proof of claim's itemization of the prepetition mortgage arrears.

For the reasons set forth below, the objection will be sustained in part.[1]

## II. BACKGROUND

According to her bankruptcy schedules, the Debtor is the owner and occupant of the real

---

[1] This Memorandum shall constitute the findings of fact and conclusions of law of the Court pursuant to Fed. Rule of Bankr. P. 7052 as made applicable to this contested matter and incorporated by Fed. Rule of Bankr. P. 9014.

-1-

property located at 1625 S. Hicks Street Philadelphia, PA.[2]  The property is subject to two mortgages, one held by Deutsche and the other held by Aurora Loan Services, Inc. ("Aurora"). The Debtor's chapter 13 plan contemplates a cure of prepetition delinquencies on both of the mortgages, estimated in the Plan to require payment of $5,100 to Deutsche and $1,250 to Aurora.

On September 8, 2005, Chase filed a proof of claim on behalf of Deutsche (collectively "the Claimant") asserting a total secured claim of $24,699.57 and an attachment which itemized the components of the claim for prepetition mortgage arrears and arrived at a total of $6,7952.52. On November 11, 2006, Chase filed an amended proof of claim ("the Amended POC"), which increased the arrears total to $7,091.45, itemized as follows:

**Pre-Petition Arrearage**

| | |
|---|---|
| **Delinquent monthly payments from 1/01/2005 through 8/01/2005 at 298.93 per month** | $ 2,690.37 |
| **Accrued Late Charges** | $ 236.91 |
| **Appraisal Fees** | $ 405.00 |
| **Property Inspections Fees** | $ 96.75 |
| **Delinquent Taxes** | $ 362.92 |
| **NSF Charges** | $ 20.00 |
| **Expenses (counsel fees, cost of suit, service costs, filing costs, cost of listing property for Sheriff's Sale)** | $ 3,279.50 |
| **TOTAL PRE-PETITION ARREARS** | $ 7,091.45 |

On February 3, 2006, the Debtor filed an objection to the Amended POC asserting that

---

[2] I may take judicial notice of the docket in this case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607 (Bankr. E.D. Pa. 1998).

the expenses were excessive, unreasonable, not itemized and not verified. Additionally, the Debtor asserted that she had not been given proper credit for a sheriff's sale refund.

By the hearing date on the Debtor's objection to the Amended POC, the parties narrowed the issues considerably. They agreed that the claim for prepetition mortgage arrears should be reduced by: (1) a sheriff's refund of $290.91 and (2) the $96.75 fee for "property inspections." The remaining issue is the proper amount of attorney's fees included in the claim for mortgage arrears attributable to the legal services provided to the Claimant in a prepetition mortgage foreclosure action against the Debtor.

The parties chose to present the issue without testimony or documentary evidence. They stipulated that:

> (1) The $3,279.50 in legal expenses in the arrears itemization in the Amended POC includes $1,250 for prepetition attorney's fees.
>
> (2) The legal fees requested are approved by the Federal National Mortgage Association.[3]
>
> (3) The prepetition mortgage foreclosure action was a "routine" case in which a judgment was entered against the Debtor without any contest and a sheriff's sale then scheduled (which was stayed by the bankruptcy filing).

On this record, the parties have asked me to determine the reasonableness of the requested fee of $1,250 for the services provided in the "routine, uncontested" prepetition mortgage foreclosure action. The Debtor challenges only the reasonableness of a $1,250 and

---

[3] I understand this fact stipulation to be referring to a fee schedule established by the Federal National Mortgage Association, which may be the largest holder of mortgages in the United States. See In re Smith, 76 B.R. 426, 428 (Bankr. E.D. Pa. 1987).

does not dispute the creditor's right to include some amount in the Amended POC for prepetition legal fees.

### III. DISCUSSION

#### A. Relevant Statutory Provisions and Prior Case Law in the District

**1. the lodestar methodology**

As Judge Sigmund observed several years ago, the issue of the "reasonableness" of a legal fee for services provided to a creditor prior to the filing of a debtor's chapter 13 bankruptcy case has been "addressed by the judges of this Court on multiple occasions." In re Harper, 2000 WL 1897353, at *2 (Bankr. E.D. Pa. December 22, 2000). See, e.g., In re Galloway, 236 B.R. 236 (Bankr. E.D. Pa. 1998); In re Olick, 221 B.R. 147 (Bankr. E.D. Pa. 1998); In re McMillan, 182 B.R. 11 (Bankr. E.D. Pa. 1995); In re Vitelli, 93 B.R. 889 (Bankr. E.D. Pa. 1989); In re Smith, 76 B.R. 426 (Bankr. E.D. Pa. 1987); In re Nickleberry, 76 B.R. 413 (Bankr. E.D. Pa. 1986).

My analysis of the issue begins with Judge Fox's decision in In re Smith, a chapter 13 case like the case at bench in which a creditor sought allowance of counsel fees incurred in a routine, uncontested prepetition mortgage foreclosure action. I believe that the principles articulated in Smith retain their vitality today.

In Smith, the court analyzed the allowance of counsel fees incurred by a prepetition mortgage lender in relation to the operation of 11 U.S.C. §1322(b)(5). Section 1322(b)(5) is the Code provision that authorizes a debtor to cure prepetition defaults through chapter 13 plan

-4-

payments while concurrently paying the monthly instalments which fall due under the mortgage during the pendency of the plan. If, as is typically the case in mortgage loans, a debtor is obligated by contract to reimburse the lender for the lender's legal fees incurred after a default in payments (i.e., the parties' agreement has a "fee-shifting" provision), those counsel fees are allowable as part of the creditor's proof of claim for arrearages in a chapter 13 bankruptcy case. This approach led the Smith court to examine Pennsylvania law in order to identify the standards to be used in determining a reasonable attorney's fee in an uncontested mortgage foreclosure case.

In Smith, the debtor's mortgage contained a fee shifting provision but also was subject to Act 6 of 1974, 41 P.S. §406. When section 406 is applicable to a mortgage,[4] it limits the amount that a mortgage lender may charge a borrower for counsel fees to those fees which are "reasonable" and "actually incurred"[5] in the foreclosure process.[6] After engaging in an analysis of Pennsylvania law, the court concluded that the appropriate methodology for determining a

---

[4] The provisions of Act 6 discussed in the text apply to mortgages in an original principal amount of less than $50,000. 41 P.S. §101.

[5] If applicable, Act 6 imposes other limitations on the contractual right of a mortgage lender to shift legal fees and expenses to a borrower. See, e.g., In re Schwartz, 68 B.R. 376 (Bankr. E.D. Pa. 1986).

[6] My review of Pennsylvania case law suggests that the same standard ("reasonable" and "actually incurred") applies to court enforcement of contractual attorney's fees shifting provisions contained in mortgages which are not governed by Act 6 of 1974. It has long been the law in Pennsylvania that a contractual attorneys' fee-shifting provision is enforceable only to compensate a plaintiff for the reasonable and necessary expense of collection and that the amount allowed is within the discretion of the court. E.g., Lindley v. Ross, 137 Pa. 629, 20 A. 944 (1890). Such contractual provisions are subject to the court's equitable control and should not be enforced to the extent that they would result in an award in excess of a reasonable rate. See Jarvis v. Steffal, 54 Pa. Super. 362 (1913); accord, In re West Chestnut Realty of Haverford, Inc., 186 B.R. 612 (Bankr. E.D. Pa. 1995)

reasonable counsel fee in the bankruptcy claims allowance process is the "lodestar" method employed in <u>Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161 (3d Cir. 1973), <u>appeal following remand</u>, 540 F.2d 102 (3d Cir. 1976) and countless federal decisions since. 76 B.R. at 430-31. Under the lodestar approach, the court multiplies the number of hours reasonably expended by a reasonable hourly rate for the attorney's services.[7]

Two other aspects of the <u>Smith</u> decision are significant. First, the creditor in <u>Smith</u> requested that the court accept as <u>per se</u> reasonable, its flat fee arrangement with its client based upon a fee schedule established by the Federal National Mortgage Association ("FNMA"), said to be the largest holder of mortgages in the United States. The court rejected this invitation, reasoning as follows:

> In concluding that reasonable attorney's fees must be measured by considering the number of hours reasonably expended by [the creditor's] counsel at a reasonable hourly rate, I necessarily reject Associates' argument that the FNMA fee schedule is <u>per se</u> reasonable and should be accepted by this court. [The creditor] suggests that lenders such as FNMA have an incentive to limit their fees to a reasonable amount because "they're the ones that pay it." N.T. 38. This argument, to the extent it permits a lender to define the term "reasonable", goes too far. This very controversy arises because the lender is not paying its legal expenses; it is exercising its contractual right to pass its expenses on to its borrowers. This right is routinely exercised against mortgagors. Thus, the economic incentive to limit the attorney's fees incurred suggested by [the creditor] is illusory. . . . This is not to say that the FNMA fee schedule has no relevance to this controversy. The industry-wide standard is considered in assessing the reasonableness of the requested fees. Simply put, it is not conclusive.

76 B.R. at 432.

---

[7] In statutory fee shifting cases, the lodestar amount may be subject upward or downward based on additional factors such as case contingency or work product quality. <u>Smith</u>, 76 B.R. at 431 (citing Third Circuit Task Force, <u>Court Awarded Attorney's Fees</u>, 108 F.R.D. 237, 243 (1985)). <u>See also</u> Federal Judicial Center, <u>Awarding Attorneys' Fees and Managing Fee Litigation</u> 32-48 (2005).

Second, the attorney for the creditor in <u>Smith</u>, like the attorney in the instant case, did not offer any evidence of either his reasonable hourly rate or the number of hours expended in that debtor's particular foreclosure case because the attorney's claimed fee of $500 was based on the FNMA fee schedule. However, there was testimony in the record from a competent witness which suggested that a routine, uncontested foreclosure case would ordinarily require three (3) to four (4) hours of attorney time prior to attendance at a sheriff's sale. Based on this record, the court allowed a fee of $375 (3 hours at $125/hour).[8]

### 2. <u>11 U.S.C. §1322, §1325 and §506(b) of the Code</u>

There is a fundamental statutory issue relating to the allowance of fees incurred by mortgage lenders in prepetition legal proceedings which should be identified before I discuss the relevant case law in this district and apply the law to the facts in this case.

The <u>Smith</u> court suggested that the statutory basis for the allowance of counsel fees as a component of a mortgage lender's claim for prepetition arrears in a chapter 13 case in which the

---

[8] The court identified the factors which caused it to determine that three (3) hours was reasonable:

> In accepting the lower end of the three to four hour range suggested by the testimony, I have considered the following: (1) the absence of contemporaneous time records; (2) the fact that the case presented no special or unusual legal issues; (3) the use of form pleadings by [the lender's attorney] and forms filled out by non-attorney staff; and (4) the fact that the foreclosure litigation terminated prior to sheriff's sale making it unnecessary for [the lender's attorney] to perform various services which he ordinarily performs after the entry of judgment and which form the basis of his total $500.00 fee.

76 B.R. at 432.

debtor proposes to cure the prepetition mortgage delinquency is 11 U.S.C. §1322(b)(5)[9] and that neither 11 U.S.C. §1322(a)(5) nor 11 U.S.C. §506(b) are applicable. See 76 B.R. at 430 n.4. See also Appeal of Capps, 836 F.2d 773 (3d Cir. 1987) (holding that a claim for mortgage arrears is not an allowed secured claim within the meaning of 11 U.S.C. §1325(a)(5)); In re Fries, 68 B.R. 676, 681-82 (Bankr. E.D. Pa. 1986) (same).

In 1993, in Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187 (1993), the Supreme Court held that an arrearage claim is governed by §506(b) and §1325(a)(5). The issue in Rake was not whether counsel fees were allowable as part of the mortgage arrears claim. Rather, the issue was whether the creditor was entitled to an allowance of postpetition interest on the mortgage arrears component of its secured claim in a chapter 13 case in which the debtor proposed to cure a prepetition default (as opposed to satisfying the creditor's entire allowed secured claim). That the Rake dispute involved the allowance of interest in a proof of claim as opposed to the allowance of prepetition counsel fees is not a material distinction in my analysis because the Court held unequivocally that the arrearage component of a mortgage lender's allowed secured claim is itself a "claim" under §506(b). See 506 U.S. at 471, 113 S.Ct. at 2191. As a bankruptcy "claim," any charge sought to be included in the claim for mortgage arrears may then be subject

---

[9] Section 1322(b)(5) provides that, subject to §1322(a) and (c), a chapter 13 plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

to §506(b).[10] As a result, Rake instructs that a secured creditor (or at least oversecured creditors) can look to §506(b) as authority for including prepetition counsel fees in a proof of claim. To the extent that Smith suggested that §506(b) is irrelevant, that holding was overruled by Rake.

In 1994, by enacting the Bankruptcy Reform Act of 1994, Pub. L. No. 103-394, §305, Congress modified the outcome in Rake through the addition to the Code of 11 U.S.C. §1322(e). Section 1322(e) has been described as a legislative decision to "overrule" Rake. See 8 Collier on Bankruptcy ¶1322.18, at 1322-67 (15th rev. ed. 2005). Section 1322(e) provides that, notwithstanding §506(b), §1322(b)(2) and §1325(a), in a plan which provides for a cure of a default, "the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law."[11] Section 1322(e) applies only to loan transactions entered into after October 22, 1994. See Pub. L. 103-394, §§ 702(b)(2)(D) (Oct. 22, 1994).

Thus, it would appear that state law (as suggested in Smith) governs the allowance of attorney's fees for prepetition services in a proof of claim for mortgage arrears for mortgage transactions after October 22, 1994, while §506(b) governs the allowance for pre-October 22, 1994 transactions.

---

[10] Section 506(b) of the Code provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

[11] . "Thus, if the agreement does not provide for the payment of interest . . . and charges, or if no written agreement exists, then the default can be cured under the plan without interest." 2 Norton Bankruptcy Law and Practice §43:3 (March 2006).

-9-

Under section 506(b), attorney's fees may be allowed if three elements are satisfied: (1) the claim is an oversecured, allowed secured claim; (2) the fees are reasonable; and (3) the fees are provided for under the agreement between the parties or by statute. 4 Collier on Bankruptcy ¶506.04[3], at 506-113 (15th rev. ed. 2005); accord, e.g., In re Olick, 221 B.R. 147 (Bankr. E.D. Pa. 1998); In re West Chestnut Realty of Haverford, Inc., 186 B.R. 612 (Bankr. E.D. Pa. 1995).[12]

### 3. prior cases in this district

Whether basing the analysis on §1322(b)(5), §1322(e) or §506(b), every reported decision in this district (cited above in the first paragraph of this Part III.A.) has employed the lodestar approach when determining and allowing a reasonable counsel fee as a component of a proof of claim in a chapter 13 case. Similarly, in applying §506(b) in a non-chapter 13 context, Judge Raslavich employed a lodestar approach to determine the reasonableness and allowability of a prepetition counsel fee. In re West Chestnut Realty of Haverford, Inc., 186 B.R. 612, 618 (Bankr. E.D. Pa. 1995) (also observing that Pennsylvania law "dovetails neatly" with federal law in requiring that the fees be reasonable).

Thus, regardless whether the ultimate source of authority is §1322(e) or §506(b), the core holdings of Smith remain sound: (1) to be allowed as part of a proof of claim for mortgage

---

[12] The courts in Olick and West Chestnut Realty also stated that the requested attorney's fees under §506(b) must also be allowable under state law. Courts differ as to whether, under §506(b), state law or federal law is applicable to the determination whether an oversecured creditor's contractual entitlement to shift fees is enforceable. See 4 Collier on Bankruptcy ¶506.04[3][a] (15th rev. ed. 2005). That issue is not presented in this case. Nor am I confronted in this case with the issue whether an undersecured creditor is entitled to counsel fees for prepetition services by virtue of §1322(e), notwithstanding the §506(b) requirement that the a claim must be oversecured before counsel fee may be allowed.

arrearages, attorney's fees incurred in a prepetition mortgage foreclosure case must be authorized by the parties' contract or by statute and be reasonable in amount and (2) a lodestar analysis should be employed in determining the reasonableness of the claimed prepetition attorney's fees.[13]

In Harper, the court considered the possibility of allowing a reasonable fee for prepetition legal services provided in a mortgage foreclosure action based upon a fee schedule embodying an industry wide standard. The court stated that it was "not adverse" to the concept provided that the claimant could demonstrate with competent evidence that (1) the fee schedule described the procedures involved in the foreclosure process and the time routinely expended for the procedures and (2) the procedures were actually employed in the case before the court. 2000 WL 1897353, at *4.

The conditions Harper articulated for the possible adoption of a fee schedule approach appear to be lodestar-type conditions, although not labeled as such. In other words, the court suggested that an industry fee schedule could be acceptable if there were sufficient evidence that the amounts in the fee schedule were generally comparable to the amounts obtained if the lodestar method were employed. For want of a better term, one might call the Harper court's approach a "lodestar-based fee schedule." The Harper court did not further consider the issue,

---

[13] I note again that the lodestar approach is only the starting point in the determination. Other relevant factors may require a reduction of the fee allowed. For example, if the contract contains a percentage ceiling on the amount of counsel fees that may be shifted, the contractual ceiling will limit the amount of the fee allowed as part of the proof of claim. E.g., In re Rorie, 98 B.R. 215, 218 (Bankr. E.D. Pa. 1989); In re Cosby, 33 B.R. 949 (Bankr. E.D. Pa. 1983). Similarly, a statutory provision may limit the enforceability of a contractual fee-shifting provision. E.g., 41 P.S. §406 (for mortgages subject to the statute, counsel fees limited to $50 prior to commencement of foreclosure or other legal action).

however, as the creditor failed to make a satisfactory factual showing to convince the court that the flat fee schedule provided for reasonable fees. Consequently, the court granted fees only in the amounts conceded as reasonable by the debtor.

In other cases, when creditors have failed to make a satisfactory showing of their entitlement to fees under the lodestar method, the courts limited the allowed fee to the amount that the debtor has agreed was reasonable. See In re Galloway, 220 B.R. at 244; In re McMillan, 182 B.R. at 14 (court also declined to consider relevance of fee schedules of FNMA and Federal Home Loan Mortgage Association since they were not made part of the record). I am unaware of any case in this district in which fees were allowed for prepetition services founded solely upon an industry based fee schedule.

### B. Determining a Reasonable Fee in this Case

Due to the paucity of the record, it is difficult to determine the amount that should be allowed as a reasonable fee for the legal services provided in the prepetition mortgage foreclosure action against the Debtor. I have no information regarding the Claimant's counsel's hourly rate or the time spent in connection with the foreclosure action. Nor do I have access to the work product for which the fees are claimed. Compare Harper, 200WL 1897353, at *4 (court set reasonable fee after examining papers filed in state court case and made part of the bankruptcy court record). As in Galloway and McMillan, I could solve the problem by limiting the allowed fee to the amount that the Debtor has agreed is reasonable, except that the Debtor has not specified any amount that she agrees is reasonable. Another solution to the problem could be

to disallow the requested attorney's fees altogether on the theory that the Claimant has not met its burden of proof. However, I am unwilling to disallow the fees in their entirety because the Debtor has conceded that the Claimant is entitled to fees. The Debtor objects only to the amount requested ($1,250).

With little guidance from the parties, I am forced to rely upon the conclusion in Smith that a routine, uncontested foreclosure action may reasonably require three (3) to four (4) hours of attorney time prior to the attendance at the actual sheriff's sale. In this case, I will use 3.5 hours as the reasonable amount of time in the lodestar analysis. As for the hourly rate of the Claimant's counsel, drawing upon my experience, I will employ $200/hour as a reasonable hourly rate. See generally In re Busy Beaver Building Centers, Inc., 19 F.3d 833, 854 (3d Cir. 1994) (judge's experience is the starting point in analyzing reasonable rates based on market rates). Thus, I will allow a counsel fee of $700 for the prepetition legal services provided to the Claimant.

I observe that, even if I had a better record, the process of determining a reasonable attorney's fee for routine prepetition mortgage foreclosure work continues to be akin to fitting a round peg into a square hole. Notwithstanding the bankruptcy courts' adherence to the lodestar methodology, mortgage lenders still prefer to seek the allowance of the fees incurred by their prepetition mortgage foreclosure counsel without submission of time records. From this, I infer that there is either some practical or economically driven reason why lenders and their counsel have resisted the lodestar approach. As evident from the reported cases, counsel for mortgage lenders have requested intermittently that the court consider using an industry wide fee schedule as an alternative to the lodestar approach. Nevertheless, there has not been a reported case with a

-13-

sufficiently detailed record for a court to determine whether it would be appropriate to employ the alternative method suggested by the lenders. See, e.g., In re Harper.

The consequence of this clash of methodologies is that the lodestar approach is the black letter law but, to some extent, it serves as a legal fiction for flat, fixed fees allowed for prepetition foreclosure work in an amount that has been set by the bankruptcy court. This conclusion is suggested from the extensive use by practitioners, for many years, of the "reasonable fee" determinations made by the courts in Smith and Nickleberry.

At first blush, the allowance of judicially established fixed counsel fees for a category of cases may seem troubling. Generally, it seems preferable to allow market forces to determine what is a reasonable fee.[14] On further consideration, there may be a good reason why this practice has developed – the possible absence of a reliable market for guidance. Counsel for mortgage lenders may have sound business reasons why maintenance of time records is not suited to their practice and that reliance on an industry fee schedule is preferable. At the same time, however, as noted in Smith, it is possible that the industry fee schedule is not an acceptable market-based alternative to the lodestar methodology. Before courts can rely on an industry wide fee schedule, rather than the lodestar method for determination of a reasonable attorney's fee, there should be a showing that the fee schedule is the product of competitive market forces.[15]

---

[14] Under both state law or federal law, courts rely on the market for determining reasonable counsel fees. Compare 41 P.S. §503(b) (in certain actions, in determining fees to be allowed, court may consider, inter alia, "customary charges of the members of the bar for similar services") with In re Busy Beaver, Building Centers, Inc., 19 F.3d at 848 (in awarding reasonable compensation under 11 U.S.C. §330, courts are to "rely on the market").

[15] The competition among law firms to retain mortgage lenders as clients may or may not serve to create an adequate market in an environment where the legal fees charged are passed on to the borrower.

However, as observed in Smith, foreclosure legal fees are charged to the borrowers and, assuming the collateral has sufficient value, paid by the borrowers or collected on liquidation of the collateral. Thus, the incentives to control fees that a mortgage lender might otherwise have as a "sophisticated consumer of legal services"[16] may be absent in these cases. In the end, those decisions that have established benchmark fees may be considered the courts' best effort to simulate a determination of a market based reasonable fee when faced with limited information and an imperfect market.

To sum up, I see three (3) possible methods for determining counsel fees to be allowed as part of a mortgage lender's proofs of claim.

First, there is the classic, individualized lodestar determination, which multiplies the attorney's hourly rate by the number of hours reasonably expended in the particular case at hand. As I observed above, lenders' counsel have been resistant to this approach and there is nothing to indicate that their position will change in the foreseeable future.

Second, there is the methodology suggested in Harper, which I have characterized as a "lodestar-based fee schedule." As stated earlier, this is a fee schedule based upon a judicial determination of a reasonable hourly rate and a reasonable number of hours generally required to be expended by lenders' counsel in an uncontested mortgage foreclosure case in a particular jurisdiction. If the record in an initial case is sufficient to permit a court to find that "lodestar-based fee schedule" provides for reasonable fees, fee determinations in subsequent cases could be made in a summary fashion. In the later case, a lender may need to establish only that its counsel employed the same procedures as were employed by counsel in the case that held the "lodestar-

---

[16] In re Busy Beaver Building Centers, Inc., 19 F.3d at 853.

-15-

based fee schedule" to be reasonable.

Third, lenders may continue to ask the court to adopt an industry based fee schedule that is based on something other than a lodestar methodology. See generally In re Busy Beaver Building Centers, Inc., 19 F.3d at 856 (recognizing that, in evolution of the legal community, alternative billing practices could replace lodestar method). An industry based fee schedule (such as those employed by FNMA and HUD) may or may not provide for fees in the same amounts as those derived from a "lodestar-based fee schedule." In order to prove that the fees in an industry based fee schedule are reasonable, at a bare minimum, the lenders would need to show that the fees are based on competitive market forces.

Unless and until I am presented with a satisfactory record for determining reasonable fees based on either the second or third alternatives, I will continue to use the classic lodestar method in resolving objections to claims for prepetition counsel fees incurred by mortgage lenders in chapter 13 cases. I recognize that in the instant case, I have employed something like the second approach, even though the record was not truly adequate. As explained earlier, this was done out of necessity. For this reason, I observe that the particular amount allowed in this case is not set in stone. With a more complete record in a different case, I may determine that a reasonable fee for an uncontested prepetition mortgage foreclosure action differs from the fee allowed in this case.

### III. CONCLUSION

For the reasons set forth above, I will sustain in part the Debtor's objection to the Claimant's proof of claim for prepetition mortgage arrears of $7,091.45. I will reduce the arrears claim by: (1) the sheriff's refund of $290.91 and (2) the property inspection charge of $96.75 fee and (3) the difference of $550 between the attorney's fee claimed ($1,250) and the amount that I have determined to be reasonable ($700). The total of these reductions is $936.96. Thus, the arrearage claim will be allowed in the amount of $6,154.49.

An order consistent with this Memorandum Opinion will be entered.

Date: 4/18/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE